**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**DR. MICHAEL C. GRAYSON,**

|  |  |
|---|---|
| **Plaintiff,** | **REPORT AND RECOMMENDATION** |
|  | **18 CV 6977 (DG)(LB)** |

      -against-

**EQUIFAX INFORMATION SERVICES LLC,**

      **Defendant.**
-------------------------------------------------------------X
BLOOM, United States Magistrate Judge:

      Plaintiff Dr. Michael C. Grayson, proceeding *pro se*, brings this action against defendant

Equifax Information Services LLC ("Equifax") alleging defendant failed to remove inaccurate

information from his credit file and failed to reasonably reinvestigate information he disputed as

inaccurate pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the

New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380 *et seq.* ("NYFCRA").

Defendant now moves for summary judgment under Federal Rule of Civil Procedure 56 ("Fed.

R. Civ. P.").[1] Plaintiff opposes the motion and cross-moves for summary judgment. The

Honorable Diane Gujarati referred these motions to me for a Report and Recommendation in

accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended

that defendant's motion for summary judgment should be granted in part and denied in part, and

plaintiff's cross-motion for summary judgment should be denied.

---

[1] Defendant has provided plaintiff with the requisite notice pursuant to Local Civil Rule 56.2. ECF No. 146.

## BACKGROUND[2]

Plaintiff Dr. Michael C. Grayson describes himself as a "credit expert" who helps individuals "build and maintain perfect credit for life." Plf.'s 56.1 ¶ 40. Plaintiff brings this action as a "whistleblower" and a "victim" of defendant Equifax's "TERRORISTIC process," by which Equifax "illegally sen[t] false information to plaintiff's clients, doctors, creditors, and potential creditors in an attempt to destroy plaintiff's access to capital, income, opportunity, credit cards and patient financing." Am. Compl. ¶¶ 13–14. He alleges that Equifax "has constructed a multi trillion-dollar scheme that may be the largest the world has ever known" by "stealing consumers['] positive credit,…refusing to remove fraud alerts, [and] communicating false information to third parties." Plf.'s Opp. Def.'s Mot. Summ. J. at 102 [ECF No. 169 at 118]. He further alleges that in carrying out this 'scheme', Equifax allows creditors to charge consumers like him high fees and interest rates. Id. Plaintiff brings this action to "challenge[] the way Equifax reports" consumer credit information and the "procedures it fails to follow to ensure the maximum possible accuracy of that information." Am. Compl. ¶ 12.

---

[2] Plaintiff twice filed motions for summary judgment before the motions had been fully briefed in violation of the Court's local rules. See ECF Nos. 131, 159–60. He filed his fully briefed motion for summary judgment on May 1, 2023. Plf.'s Mot. Summ. J. [ECF No. 169]; Plf.'s Opp. Def.'s Mot. Summ. J. [ECF No. 169 at 17–121]. While plaintiff's May 1, 2023 filing is the operative motion, the Court has reviewed all admissible evidence in the record in considering the parties' cross-motions for summary judgment, including documents attached to plaintiff's improperly filed motions. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (holding that on a 56.1 motion for summary judgment, a court "may in its discretion opt to conduct an assiduous review of the record" where *pro se* plaintiff failed to comply with local court rules (citation and internal quotation marks omitted) (collecting cases)). Accordingly, the following facts are based on a review of the entire record, including: plaintiff's third amended complaint ("Am. Compl.") [ECF No. 143-4] and attached exhibits [ECF No. 143-5 and 143-6]; the parties' Local Civil Rule 56.1 Statements ("Def.'s 56.1") [ECF No. 143-2], ("Plf.'s 56.1") [ECF No. 159]; and exhibits attached to the parties' 56.1 statements and motions for summary judgment, including the Declaration of Eric Barton ("Decl. Barton") [ECF No. 143-3] and attached exhibits, the Declaration of Pamela Smith ("Smith Decl.") [ECF No. 143-8] and attached exhibits [ECF No. 143-9], and the exhibits attached to plaintiff's prematurely filed 56.1 statement [ECF No. 131-2]. The facts are not in dispute unless noted.

I.    Equifax's Policies & Procedures

Equifax is a consumer reporting agency ("CRA") as defined by the FCRA, 15 U.S.C. §§ 1681-1681x. Def.'s 56.1 ¶ 1. As a CRA, Equifax collects information about individual consumers from various sources including banks, other financial institutions, collection agencies, and court records, and uses that information to create an individual credit file for each consumer. Id. ¶ 2. Equifax uses a consumer's credit file to create a credit report that subscribers of Equifax's services can review to evaluate the consumer's potential credit risk, among other permissible purposes. Id.

Equifax has established policies and procedures that it follows to ensure the accuracy of information in a consumer's credit file and report, and to correct errors when they are brought to Equifax's attention. Smith Decl. ¶ 8. Equifax also follows certain policies and procedures to evaluate the reputability and accuracy of its sources of credit information, defined as 'data furnishers'. Id. ¶¶ 9–10; Def.'s 56.1 ¶ 5. Equifax requires all data furnishers to sign agreements that require them to follow all applicable laws, including the FCRA, and to notify Equifax upon learning that information they have supplied to Equifax is inaccurate or incomplete. Smith Decl. ¶ 10.

Equifax also follows set policies and procedures when investigating items of information that a consumer disputes in the consumer's credit report. Id. ¶ 11. Consumers can file disputes by phone, mail, or through Equifax's website. Id. ¶ 12. Upon receipt of a consumer dispute, Equifax reviews all relevant information in the dispute and supporting documentation, if any, and if needed, will notify the relevant data furnisher of the consumer's dispute for further investigation and verification of the disputed information. Id. ¶¶ 13–15. Equifax uses an automated consumer dispute verification ("ACDV") electronic system to communicate with data furnishers and to

send verification requests. Id. ¶¶ 16–17. Equifax and data furnishers use an array of pre-defined codes and narrative phrases in communicating with each other about an ACDV, with the aim of creating consistency and reducing misunderstandings. Id. ¶ 17. When a data furnisher receives an ACDV, it is required to conduct its own investigation, report its findings to Equifax, and if needed, advise Equifax to delete or update the information in the credit file. Id. ¶¶ 19–20. If the data furnisher advises Equifax to delete or update certain information, Equifax will take the necessary steps to do so. Def's 56.1 ¶ 8; Smith Decl. ¶ 20. Equifax then sends a letter notice to the consumer with the investigation results, a description of the measures taken to investigate the dispute, any additional steps the consumer may take, a summary of the consumer's rights under the FCRA, and a copy of the consumer's credit file. Def's 56.1 ¶ 9; Smith Decl. ¶ 21.

Equifax has specific policies and procedures that it follows when a consumer files a dispute reporting identity theft. Smith Decl. ¶¶ 22–24. If a consumer provides a police report or an identity theft report from the Federal Trade Commission ("FTC") with their dispute, Equifax will suppress or block the disputed information within four business days of receiving the report and proof of identification. Id. Equifax has set criteria for what qualifies as a police report or FTC identity theft report that will trigger the suppression of information. Def.'s 56.1 ¶ 11. If the consumer reports identity theft without a qualifying report, Equifax will treat the dispute as an "affidavit of fraud" and conduct an investigation as set forth above. Id. ¶ 12. If a consumer submits a qualifying report or an affidavit of fraud, or an item is verified as resulting from fraud, Equifax will place an "extended" seven-year fraud alert on the consumer's credit file. Smith Decl., Ex. KK [ECF No. 142-1 at 19–20].

II.    Identity Theft, 2014-2016[3]

In or around March 2014, plaintiff learned that his identity had been stolen. Def.'s 56.1 ¶¶ 15–16. On March 31, 2014, plaintiff filed a dispute with Equifax by filling out and sending a form[4] titled, "Identity Theft Victim's Complaint and Affidavit."[5] Am. Compl., Ex. A [ECF No. 143-5 at 2–13]; Smith Decl. ¶ 26. The affidavit listed two individuals who plaintiff believed used his personal information to steal his identity and "tamper[] with" or "open[] fraudulently" certain credit accounts. Am. Compl., Ex. A [ECF No. 143-5 at 3–4]. Plaintiff's affidavit also provided a list of account names and the dollar "amount obtained" per account but did not provide account numbers or other account information.[6] Id. at 5–8, 12–13.

Upon receipt of plaintiff's dispute, Equifax sent ACDVs to the named data furnishers and updated or removed inaccurate items in plaintiff's credit file as needed. Smith Decl. ¶ 28. On May 28, 2014, Equifax sent plaintiff a letter notifying him that it had researched each of the disputed accounts and either verified that the account was reporting correctly or had "deleted" it from plaintiff's credit file. Smith Decl., Ex. NN [ECF No. 143-9 at 887–88]. Equifax deleted two of the listed accounts and an address, but it did not remove all of the "offending accounts" from plaintiff's credit file. Def.'s 56.1 ¶¶ 19–20; Am. Compl. ¶ 28. Equifax also placed an extended fraud alert on plaintiff's credit file. Smith Decl., Ex. NN [ECF No. 143-9 at 891].

---

[3] Plaintiff's 56.1 statement makes various factual assertions that are not supported by the record. Where unsupported, the Court may note these assertions in summarizing plaintiff's case but does not rely on such assertions in considering plaintiff's cross-motion for summary judgment.

[4] The form appears to be from the FTC's website and contains instructions stating that it is a "[v]oluntary form for…disputes with credit reporting agencies…about identity theft-related problems" and directs filers to visit "ftc.gov/idtheft to use a secure online version that you can print for your records." See Am. Compl., Ex. A [ECF No. 143-5 at 2].

[5] Equifax states that it received the form on April 14, 2014. Smith. Decl. ¶ 26.

[6] Plaintiff alleges that he included a police report with this affidavit created by a "Detective Johnson" that contains all of the accounts resulting from the alleged identity theft. Am. Compl. ¶ 33; Plf.'s 56.1 ¶ 2. However, a copy of this police report is not included with plaintiff's motion for summary judgment. Plaintiff states, "that document was misplaced while [plaintiff] was in the hospital." Am. Compl. ¶ 35.

Plaintiff alleges (without supporting evidence) that he submitted the same "necessary paperwork" to two other CRAs, TransUnion and Experian, and that they removed the allegedly fraudulent accounts within "two weeks of notification."[7] Plf.'s 56.1 ¶¶ 2–3. Equifax alleges that it did not immediately suppress the disputed information in plaintiff's credit file, because the affidavit he submitted did not qualify as an FTC report or police report pursuant to its policies. Def's 56.1 ¶¶ 17–18; Smith Decl. ¶ 27.

From 2014 through 2016, plaintiff continued to dispute information in his Equifax credit report as resulting from identity theft. Def.'s 56.1 ¶ 23; Smith Decl. ¶ 30. On October 26, 2015, plaintiff submitted an affidavit,[8] in which he stated that he had filed a police report with the Nassau County Police Department on October 15, 2015. Am. Compl., Ex. B [ECF No. 143-5 at 25, 29–30]. Plaintiff provided Equifax a copy of the police report on or around December 17, 2015. Id. at 32–36. According to Equifax's internal call records, on January 7, 2016, an Equifax representative told plaintiff that the police report was "hand written," and plaintiff "stated he would get another report and send it." Smith Decl., Ex. F [ECF No. 143-9 at 166].

Equifax sent plaintiff letter responses to plaintiff's identity-theft related disputes on June 22, 2014; July 2, 2014; August 11, 2014; and January 6, 2015. Smith Decl., Ex. A–D [ECF No. 143-9 at 5, 44, 83, 104]. In each letter response, Equifax stated that it had reviewed plaintiff's "concerns" and concluded that it would not suppress the disputed information "subject to the submitted identity theft and/or police report" but would contact relevant data furnishers to verify the disputed information. Id.; Smith Decl. ¶ 31. Equifax sent plaintiff letter notices regarding its verification of the disputed accounts and investigation results on July 2, 9, 14, and 25, 2014;

---

[7] Plaintiff alleges that TransUnion and Experian removed the fraudulent information "as required by law." Am. Compl. ¶ 30. However, these CRAs are not parties to this case. Whether TransUnion and/or Experian acted appropriately under the FCRA is therefore not before the Court on the parties' instant motions.

[8] Plaintiff used the same form affidavit that he used when he reported identity theft in March 2014.

August 31, 2014; January 22, 2015; March 17, 2015; June 22, 2015; and April 27, 2016. Smith Decl. ¶ 32; Smith Decl., Ex. F–N [ECF No. 143-9 at 172, 203, 242, 273, 304, 337, 348, 361, 392].

Plaintiff alleges that during this period, Equifax violated Section 1681c-2 of the FCRA by failing to block or suppress disputed information resulting from identity theft, and committed other violations under the FCRA, including, *inter alia*, refusing to mail notices to plaintiff acknowledging receipt of his "dispute requests," Am. Compl. ¶¶ 48–52, 54–55, 58, requesting certain identification information, Id. ¶¶ 53, 56, and accessing his TransUnion and Experian credit reports without his consent, Id. ¶¶ 72–73.

III.    Removal of "Positive" Credit, 2017

Between January 29, 2017 and August 26, 2017, Equifax contacted plaintiff's creditors on at least eight separate occasions to verify account information appearing in plaintiff's credit report. Plf.'s 56.1 ¶ 12; Def.'s 56.1 ¶¶ 27–49. On each occasion, Equifax sent an ACDV to plaintiff's creditor or data furnisher to verify information that it had received from Experian or TransUnion regarding accounts flagged in Equifax's system as "fraudulently opened" or resulting from "identity fraud." See Smith Decl., Ex. O [ECF No. 143-9 at 413]; Smith Decl., Ex. Q [ECF No. 143-9 at 444]; Smith Decl., Ex. R [ECF No. 143-9 at 449]; Smith Decl., Ex. S [ECF No. 143-9 at 455]; Smith Decl., Ex. V [ECF No. 143-9 at 523]; Smith Decl., Ex.  X [ECF No. 143-9 at 559]; Smith Decl., Ex. Z [ECF No. 143-9 at 595]; Smith Decl., Ex. BB [ECF No. 143-9 at 630].

On January 29, 2017, TransUnion sent Equifax information regarding an account at Merrick Bank ("Merrick") that had been flagged as "fraudulently opened." Smith Decl. ¶ 33; Smith Decl., Ex. O. Equifax sent Merrick an ACDV, and Merrick responded that the account

should be deleted. Smith Decl. ¶¶ 33–34; Smith Decl., Ex. O. On February 11, 2017, Equifax sent plaintiff a copy of his credit report and a letter notifying him that it had "researched the credit account" and that the account had been deleted from his credit file. Def.'s 56.1 ¶ 28; Smith Decl., Ex. P [ECF No. 143-9 at 419–33]. Plaintiff alleges (without supporting evidence) that his Merrick account was closed due to Equifax reporting fraudulent information. Am. Compl. ¶¶ 143–49.

On or about May 11, 2017, Equifax sent an ACDV to Merrick regarding another account in response to information that it had received from Experian. Def's 56.1 ¶ 31; Smith Decl. ¶ 37. Merrick responded that the account information should be slightly modified but that the account was otherwise reporting accurately. Def's 56.1 ¶ 32; Smith Decl. ¶ 38.

On June 1, 2017, Equifax sent an ACDV to First National Bank of Omaha ("FNBO") regarding an account in response to information it had received from Experian. Def's 56.1 ¶ 33; Smith Decl. ¶ 39. FNBO responded and verified that the account was reporting accurately. Def's 56.1 ¶ 34; Smith Decl. ¶ 40. On June 6, 2017, Equifax sent an ACDV to FNBO regarding the same account in response to information it had received from TransUnion. Def's 56.1 ¶ 35; Smith Decl. ¶ 41. FNBO responded and verified that the account was reporting accurately. Def's 56.1 ¶ 36; Smith Decl. ¶ 42. On June 11 and 13, 2017, Equifax sent plaintiff a copy of his credit report and a letter notifying plaintiff that the FNBO account had been verified as reporting accurately. Def's 56.1 ¶ 37; Smith Decl. ¶ 43.

On June 7, 2017, Equifax sent an ACDV to US Bank regarding an account for an auto loan in response to information it had received from Experian. Def's 56.1 ¶ 38; Smith Decl. ¶ 44. Equifax alleges that US Bank instructed Equifax to delete the account. Def's 56.1 ¶ 39; Smith Decl. ¶ 45. The ACDV form provided in support of this allegation, however, is silent as to US

Bank's response. Smith Decl. ¶ 45; Smith Decl., Ex. V. On June 23, 2017, Equifax sent plaintiff a copy of his credit report and a letter notifying him that the US Bank auto loan account had been deleted. Def's 56.1 ¶ 40; Smith Decl. ¶ 46; Smith Decl., Ex. W [ECF No. 143-9 at 527–57].

On or around June 27, 2017, Equifax sent an ACDV to FNBO regarding an account in response to information it had received from Experian. Def's 56.1 ¶ 41; Smith Decl. ¶ 47; Smith Decl., Ex. X. FNBO responded and verified that the account was reporting accurately. Def's 56.1 ¶ 42; Smith Decl. ¶ 48. On July 4, 2017, Equifax sent plaintiff a copy of his credit report and a letter stating that the account had been verified as reporting accurately. Def's 56.1 ¶ 43; Smith Decl. ¶ 49.

On August 6, 2017, Equifax sent an ACDV to Merrick regarding an account in response to information received from Experian. Def's 56.1 ¶ 44; Smith Decl., ¶ 50. Merrick responded that the account's information should be slightly modified but was otherwise reporting accurately. Def's 56.1 ¶ 45; Smith Decl. ¶ 51; Smith Decl., Ex. Z. On August 26, 2017, Equifax sent plaintiff a copy of his credit report and a letter stating that the account had been verified with slight modifications. Def's 56.1 ¶ 46; Smith Decl. ¶ 52; Smith Decl., Ex. AA [ECF No. 143-9 at 602–13].

On August 26, 2017, Equifax sent an ACDV to IC System Inc. ("IC System") regarding an account in response to information received from Experian. Def's 56.1 ¶ 47; Smith Decl. ¶ 53. On September 15, 2017, IC System instructed Equifax to delete the account. Def's 56.1 ¶ 48; Smith Decl., Ex. BB. On September 16, 2017, Equifax sent plaintiff a copy of his credit report and a letter stating that the IC System account had been deleted. Smith Decl., Ex. CC [ECF No. 149-3 at 634–36].

On September 1, 2017, plaintiff filed a dispute with Equifax, alleging that at least six accounts in his credit report had been opened fraudulently and requested their removal from his credit file. Smith Decl. ¶ 56. Equifax sent ACDVs to data furnishers for all six accounts and received responses for each of the accounts between September 5 and 18, 2017. Id. ¶¶ 57–63; Smith Decl., Ex. DD [ECF No. 143-9 at 666]; Smith Decl., Ex. EE [ECF No. 143-9 at 692]; Smith Decl., Ex. FF [ECF No. 143-9 at 718]; Smith Decl., Ex. GG [ECF No. 143-9 at 744]; Smith Decl., Ex. HH [ECF No. 143-9 at 770]; Smith Decl., Ex. II [ECF No. 143-9 at 796]. On September 18, 2017, Equifax sent plaintiff a copy of his credit report and a letter notice reporting that all of the accounts had been verified as belonging to plaintiff, with the exception of an account at FNBO, which was deleted from his credit file as instructed by FNBO. Smith Decl., Ex. JJ [ECF No. 143-9 at 823–25]. According to the investigation results in the letter notice, plaintiff also appears to have disputed the US Bank auto loan account that had been removed in June 2017. Id. at 825. In the results, Equifax reports that it had "reviewed [plaintiff's] concerns" and concluded that the "disputed account us bank [*sic*] auto loan is currently not reporting on the Equifax credit file." Id.

Plaintiff alleges that during this period, Equifax reported "positive credit" in his credit file to data furnishers as "fraud" and thereafter deleted these accounts from his credit file. Am. Compl. ¶¶ 86, 150–151; Plf.'s 56.1 ¶ 11. As "proof" that Equifax removed around "39 accounts" from his report, plaintiff submits a copy of what appears to be Equifax's internal records listing accounts in plaintiff's credit file with notes such as "FRAUD UDF," "CREDIT GRANTOR DELET UDF," and "THIS ITEM HAS BEEN DELETED FROM THE CREDIT FILE." Plf.'s Mot. Summ. J., Ex. D [ECF No. 169-1 at 11–38]. Plaintiff also submits the following letters from plaintiff's creditors:

(a) A letter from Merrick, dated February 16 , 2017, noting that it had "received a block notification from Equifax for this account on February 2, 2017." Plf.'s Mot. Summ. J., Ex. E [ECF No. 169-1 at 49].

(b) A letter from loan and lease specialist "Lori Sill" at US Bank, dated December 11, 2018, stating that plaintiff had opened an auto loan account on May 30, 2017 and had made an identity fraud claim with Equifax on June 8, 2017, "indicating the account was opened fraudulently." Plf.'s Mot. Summ. J., Ex. E [ECF No. 169-1 at 50]. It states that pursuant to US Bank procedures, "the reporting was turned off and we sent a request to the reporting agencies to delete the tradeline." Id. It further states that "consumer credit reporting for this account will not be restored" and that based on US Bank's investigation, it had determined that the "information submitted…to the [CRAs] is accurate and no changes will be submitted." Id.

(c) Two undated letters on US Bank letterhead from a "Jamie Villwock" certifying that Dr. Grayson's account at US Bank "was not the cause of fraud" and "should not have been deleted" with a request to "[p]lease process AUD number 92492645 and have the account report again." Plf.'s Mot. Summ J., Ex. D [ECF No. 169-1 at 20–21].

Plaintiff alleges that "to this day" Equifax has not "reinserted" the positive credit in his credit file. Plf.'s 56.1 ¶ 11. Based on the foregoing, plaintiff claims that Equifax willfully or negligently failed to maintain or follow reasonable procedures to ensure maximum possible accuracy of information in his credit report, pursuant to Section 1681e(b); willfully or negligently failed to reasonably reinvestigate information in response to his consumer disputes, pursuant to Section 1681i; and willfully or negligently failed to provide him a copy of his credit report upon request, pursuant to Section 1681g. Am. Compl. ¶ 182.

IV.    Fake Fraud Alerts

Plaintiff also alleges that Equifax placed "fake fraud alerts" on his Equifax credit report as well as his credit reports created by TransUnion and Experian without plaintiff's authorization, in violation of Section 380-j(e) and 380-k of the NYFCRA. Am. Compl. ¶¶ 74, 83, 225. Plaintiff alleges that the fake fraud alerts made "getting loans, credit cards, and patient financing impossible because [Equifax] included a fake [phone] number" for potential creditors to call for verification. Id. ¶¶ 76–78. He alleges that for "over five years," he "called and wrote" to request the alert's removal, but that Equifax refused. Id. ¶¶ 84–85. Furthermore, whenever Experian or TransUnion removed the alert from their credit reports, Equifax would "simply request that [they] reinsert" it. Id. ¶ 81.

In support of these allegations, plaintiff submits three letter notices from Experian: the first two notices are dated January 29, 2017 and June 5, 2017, and include the following note: "We were notified by one or more of the nationwide [CRAs] that you recently reported to them that you believe information in your credit report is inaccurate due to fraud. To assist you in protecting your privacy, we have added a temporary Initial Security Alert to your Experian credit file…." Am. Compl., Ex. F [ECF No. 143-5 at 50–52]. The third letter notice, dated August 4, 2017, states that Experian had removed the fraud alert from plaintiff's credit report per his request and that he would need to contact Equifax and TransUnion directly to remove any fraud alerts appearing in those credit reports. Am. Compl., Ex. F [ECF No. 143-5 at 49]. Plaintiff also submits a "three bureau credit report" by IdentityIQ that includes a "customer statement" noting that plaintiff had "requested an alert be placed on [his Equifax] credit file" and that an "ID security alert" had been placed "for one year beginning 12-20-18" on his Experian credit file. Am. Compl., Ex. G [ECF No. 143-5 at 55]; Plf.'s Mot. Summ. J., Ex. C [ECF No. 131-2 at 8].

V.    Damages

Plaintiff alleges that as a result of Equifax's conduct, his credit score decreased from "over 800" to 599. Am. Compl. ¶¶ 155–56. This lower credit score caused him to be denied credit or "access capital" for his business ventures, caused him to lose out on "lucrative business opportunities" such as a partnership with Goldman Sachs, and caused damage to his "credibility and reputation as a credit expert." Id. ¶¶ 163–72; Plf.'s 56.1 ¶ 40. He claims that he "lost several credit cards and loans that were terminated" after Equifax contacted his creditors requesting that they close plaintiff's accounts. Plf.'s 56.1 ¶¶ 12–14. Plaintiff further alleges that he was initially approved for "patient financing" but then later denied financing after Equifax notified the creditor that the account had been "fraudulently opened." Id. ¶ 16. As a result of this loss in financing, plaintiff was unable to cover the costs of his medical care, including for treatment of his injured foot after he stepped on a nail. Am. Compl. ¶¶ 158–62; Plf.'s 56.1 ¶ 16; Plf.'s Mot. Summ J., Ex. G [ECF No. 131-2 at 44–48]. Plaintiff alleges that because of Equifax, he was unable to finance his medical care, which led to his foot's partial amputation. Plf.'s 56.1 ¶¶ 32–39. Plaintiff alleges that without good credit, he cannot afford a prosthetic for his foot and struggles to walk. Am. Compl. ¶ 162. Plaintiff also alleges Equifax's conduct caused him to suffer humiliation, embarrassment, emotional distress, anxiety, and fear. Id. ¶ 173.

**PROCEDURAL HISTORY**

The procedural history of this case is long and complicated. Plaintiff filed the original complaint on December 4, 2018. ECF No. 1. Plaintiff filed an application for a Temporary

Restraining Order ("TRO") and a Preliminary Injunction ("PI") on April 23, 2019. ECF No. 15. The Court[9] denied plaintiff's application on April 24, 2019. ECF No. 14.

Defendant moved to dismiss plaintiff's complaint on June 5, 2019. ECF No. 19. The motion was referred to Judge Mann, who conducted a settlement conference with the parties on December 13, 2019. ECF No. 29. The settlement conference was unsuccessful, and plaintiff was given until January 15, 2020 to amend the complaint. Id.

Plaintiff amended the complaint on January 15, 2020. ECF No. 31. Plaintiff again moved for a TRO and PI on March 9, 2020, ECF No. 35, and the application was denied. ECF No. 37. Defendant moved to dismiss the amended complaint on April 30, 2020. ECF No. 41. Plaintiff moved for a TRO and PI a third time on July 20, 2020, ECF No. 60, and the application was denied. ECF No. 62.

On January 29, 2021, the Court dismissed plaintiff's amended complaint and granted plaintiff leave to file a second amended complaint. ECF No. 66. Plaintiff filed a second amended complaint on March 30, 2021. ECF No. 68. Defendant moved to dismiss the second amended complaint. ECF No. 69. Prior to ruling on defendant's motion, plaintiff moved to amend the complaint a third time. ECF No. 71. The Court granted plaintiff's motion on May 10, 2021, and the third amended complaint, ECF No. 71-1, became the operative complaint. Defendant moved to dismiss plaintiff's third amended complaint on May 12, 2021. ECF No. 78. The motion was denied on February 15, 2022. ECF No. 94.

The Court referred the case to Court-annexed mediation and set discovery deadlines on March 22, 2022. ECF No. 98. The parties did not reach a resolution at the mediation. See ECF

---

[9] The case was initially assigned to Chief Judge Margo K. Brodie and to Magistrate Judge Roanne L. Mann. It was reassigned from Judge Brodie to Judge Gujarati on February 25, 2021, and from Judge Mann to me on January 9, 2023.

Order dated June 29, 2022. The Court then granted an extension of time to complete discovery and ruled on a number of motions related to discovery and the parties' protective order. ECF Nos. 121, 123, 132; ECF Order dated October 31, 2022; ECF Order dated April 27, 2023. On November 4, 2022, the Court set a briefing schedule for the instant motions. See ECF Order dated November 4, 2022.

Defendant now moves for summary judgment. ECF No. 143. Plaintiff opposes the motion, and defendant has replied. ECF No. 144–45. Plaintiff cross-moves for summary judgment. ECF No. 131.[10] Defendant opposes the motion. ECF No. 168.

**STANDARD OF REVIEW**

I.    Summary Judgment

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational

---

[10] Plaintiff's first motion for summary judgment was premature, as it had not been fully briefed pursuant to Judge Gujarati's Individual Rules. ECF No. 132. On March 30, 2023, plaintiff filed a notice of motion for summary judgment, ECF No. 160, and a Local Civil Rule 56.1 Statement of Facts, ECF No. 159. The Court ordered plaintiff to file a fully briefed motion by April 28, 2023, and ordered defendant to oppose plaintiff's motion by the same date. See ECF Order dated April 27, 2023. Plaintiff moved for summary judgment for a third time on May 1, 2023. ECF No. 169.

juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). When a plaintiff is proceeding *pro se*, as in the instant action, the Court "reads his papers liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotations omitted).

If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." S. Katzman Produce Inc. v. Yadid, 999 F.3d 867, 877 (2d Cir. 2021). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts…the Court may consider the fact undisputed for purposes of the motion…." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

The FCRA's purpose is to ensure that CRAs adopt "reasonable procedures" that are "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization" of a consumer's credit information. 15 U.S.C. § 1681(b). The FCRA "creates a private right of action" against CRAs "for the negligent or willful violation of any duty imposed under the statute." Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 73 (2d Cir. 1995).

I.     Whether Plaintiff's Claims Are Time Barred

A plaintiff must bring an action under the FCRA within two years of the date on which the plaintiff discovers the violation that is the basis for such liability, or within five years of the date on which the underlying violation occurs. 15 U.S.C. § 1681p. The two-year statute of limitations under the FCRA begins to accrue when the plaintiff "possesses all of the material facts necessary to identify a violation."[11] TransUnion LLC v. Lindor, 393 F. App'x 786, 788 (2d Cir. 2010) (summary order). Each "alleged failure [by defendant] to comply with [its] FCRA obligations constitutes a separate FCRA violation" subject to its own statute of limitations. Marcinski v. RBS Citizens Bank, N.A., 36 F. Supp. 3d 286, 290–91 (S.D.N.Y. 2014).

Plaintiff commenced this action on December 4, 2018. While plaintiff's claims, which extend back to March 2014, fall within the FCRA's five-year statute of repose,[12]  Equifax argues that because plaintiff learned of the alleged identity theft in March 2014, his claims occurring before December 4, 2016 are time barred by the statute's two-year statute of limitations. Def.'s Mem. of Law at 11 [ECF No. 143-1]. The Court agrees with Equifax's conclusion but disagrees with its reasoning. The relevant inquiry for statute of limitations purposes is not when plaintiff

---

[11] The FCRA's two-year statute of limitations is also referred to as the statute's "discovery accrual provision." Lindor v. Trans Union LLC, No. 08-CV-5143, 2009 WL 10700261, at *2 (E.D.N.Y. Sept. 16, 2009), aff'd, 393 F. App'x 786 (2d Cir. 2010). Congress added the discovery accrual provision in 2003 pursuant to the Fair and Accurate Credit Transactions Act ("FACTA"). Id. Title I of the Act contains "extensive provisions" regarding identity theft prevention and credit history restoration, with the stated purpose being to "provide[] consumers with the tools they need to fight identity theft and to ensure the accuracy of their credit reports while establishing permanent national credit reporting standards ...." Id. at *8 (quoting H.R. Rep. No. 108-263, 22 (2003)).

[12] The FCRA's five-year time bar is a "statute of repose that runs from the defendant's last culpable act" regardless of plaintiff's awareness of the act. Abrogina v. Kentech Consulting, Inc., No. 16-CV-0662, 2022 WL 19915439, at *2 (S.D. Cal. July 14, 2022) ("[T]he FCRA, 15 U.S.C. § 1681p, is a statute of repose that imposes a hard deadline, unforgiving in nature no matter the circumstance.").

discovered the identity theft, but rather when he first discovered the violation that is the basis for Equifax's liability. Said a different way, the statute of limitations runs from when plaintiff had all the material facts necessary to discover that Equifax failed to comply with its FCRA duties.[13] See, e.g., Manes v. JPMorgan Chase Bank, N.A., No. 20-CV-11059, 2022 WL 671631, at *3–4 (S.D.N.Y. Mar. 7, 2022)[14] (distinguishing between when plaintiff became "aware of issues" in defendant's credit determination and when plaintiff became aware of defendant's failure to conduct a reasonable investigation for statute of limitations purposes).

Plaintiff filed his first dispute reporting identity theft with Equifax in March 2014. Assuming his dispute included a "qualifying" police report or FTC report that met the requirements of Section 1681c-2 under Equifax's policies,[15] Equifax was obligated to suppress the disputed information within four business days of receiving plaintiff's dispute. Equifax did not suppress the information, however, because it maintains that the affidavit plaintiff submitted

---

[13] Plaintiff's allegations occurring before December 4, 2016, liberally construed, arise under four sections of the FCRA, each with their own basis for liability: Section 1681e(b) imposes liability where defendant fails to use reasonable procedures to ensure accurate information in plaintiff's credit report; Section 1681i imposes liability where defendant fails to conduct a reasonable reinvestigation within thirty days after receiving notice of disputed information; Section 1681c-2 imposes liability where defendant fails to block or suppress information that a consumer disputes as resulting from identity theft; and Section 1681g imposes liability where defendant fails to provide plaintiff with a copy of their credit file.

[14] The Clerk of Court is respectfully directed to send plaintiff the attached copies of all the unreported cases cited herein.

[15] Section 1681c-2 requires a CRA to suppress disputed information within four days of receiving from the consumer "(1) proof of the [consumer's] identity; (2) a copy of the identity theft report; (3) [identified] information resulting from the alleged identity theft; and (4) a statement by the consumer affirming that the disputed information does not relate to any transaction by the consumer." Phipps v. Experian, No. 20-CV-3368, 2020 WL 3268488, at *4 (S.D.N.Y. June 15, 2020) (citing 15 U.S.C. § 1681c-2(a)). An "identity theft report" must "at a minimum" allege an identity theft; be a copy of "an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency…;" and subject the filer to criminal penalties if "the information in the report is false." 15 U.S.C. § 1681a(q)(4). FCRA regulations provide that an "identity theft report" must allege "with as much specificity as the consumer can provide[,]" including any additional information or documentation a CRA "reasonably requests for the purpose of determining the validity of the alleged identity theft." 12 C.F.R. § 1022.3(i)(1)(i)–(iii). Examples of additional information that a CRA may reasonably request include specific dates of when the theft occurred, how the consumer learned of the theft, information to identify the perpetrator, names of data furnishers, and account numbers, among other relevant information known to the consumer. Id. § 1022.3(i)(2). FCRA regulations also provide that it is reasonable for a CRA to require additional information when the consumer provides "a law enforcement report generated by an automated system with a simple allegation that an identity theft occurred to support a request for [a credit information] block…." 12 C.F.R. § 1022.3(i)(3)(iii).

did not qualify as a police or FTC report pursuant to its policies. Def's 56.1 ¶ 18; Smith Decl. ¶¶ 27–28. Equifax sent plaintiff a letter notifying him of its decision not to suppress the information on May 28, 2014. Smith Decl., Exhibit NN.

Therefore, plaintiff learned of Equifax's potential liability under the FCRA somewhere between four business days after plaintiff first submitted his affidavit in March 2014 (when plaintiff would have learned that Equifax had not suppressed the disputed information pursuant to Section 1681c-2) and when plaintiff received Equifax's letter regarding the results of its investigation sent on May 28, 2014 (when plaintiff may have learned that Equifax had not followed reasonable procedures pursuant to Section 1681e(b) or reasonably reinvestigated the dispute pursuant to Section 1681i). As plaintiff filed the instant action on December 4, 2018, events on May 28, 2014 are well outside the applicable statute of limitations period. Thus, plaintiff's claims regarding his first identity theft-related dispute are time barred.

The same analysis applies to the disputes plaintiff submitted in 2014 and 2015, all of which appear to be related to the alleged identity theft. Def.'s 56.1 ¶ 22. While the Second Circuit has not addressed whether subsequent disputes based on previously disputed information resets the limitations clock for FCRA claims,[16] the Court need not address the issue here. Even assuming each of plaintiff's disputes qualify as a discrete violation triggering Equifax's FCRA duties anew, plaintiff filed his last identity-theft related dispute on or around December 17, 2015. Am. Compl. ¶¶ 43–45; Am. Compl., Ex. B. On January 7, 2016, Equifax informed plaintiff that his police report was "hand written," and he responded that he would resubmit a report. Smith Decl., Ex. F. Equifax sent its last letter notice of its investigation into the alleged identity theft on

---

[16] For an in-depth analysis of the caselaw across U.S. district courts on this issue, see Lavender v. Experian Info. Sols., Inc., No. 21-CV-4739, 2023 WL 3739041, at *5 (E.D. Pa. May 30, 2023) (noting that "[w]hether a consumer's filing of subsequent credit disputes restarts the statute of limitations period set forth by Section 1681p is a question that has divided federal district courts").

April 27, 2016. Smith Decl., Ex. N. Therefore, plaintiff would have had until April 27, 2018 to file the instant complaint for these claims to have been timely filed within the statute of limitations period. As plaintiff did not file the initial complaint until December 4, 2018, plaintiff's claims regarding defendant's actions or inaction before December 4, 2016 are time-barred.[17]

II.    Whether Plaintiff Has Established a Violation under Sections 1681e(b) and 1681i

Section 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To succeed on a Section 1681e(b) claim, a plaintiff must establish that: (1) the CRA was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the CRA reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the CRA's negligence proximately caused the plaintiff's injury. Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).

If a plaintiff disputes the accuracy of information in their credit report and notifies the CRA of their dispute, Section 1681i requires that the CRA conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file...." 15 U.S.C. § 1681i(a). "[W]here a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." Napoleon v. 5665 Sunrise Highway Corp., No. 18-CV-5703, 2021 WL 3469991, at *9 (E.D.N.Y. July 7, 2021) (quoting Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014)).

---

[17] Plaintiff's 2014-2016 claims are time barred whether or not plaintiff filed a qualifying identity theft report requiring suppression of information under Section 1681c-2.

For claims under Section 1681e or Section1681i, "the threshold question is whether the disputed credit information is inaccurate." Phipps, 2020 WL 3268488, at *3 (citing Anderson, 2019 WL 6324179, at *3); see also Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 272–73 (S.D.N.Y. 2013) ("[A] plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate."); Shimon v. Equifax Info. Servs. LLC, 431 F. Supp. 3d 115, 120 (E.D.N.Y. 2020), aff'd, 994 F.3d 88 (2d Cir. 2021) ("It is axiomatic that to maintain a cause of action under § 1681e(b), a plaintiff must show that the information was inaccurate." (citation, internal quotation marks, and alterations omitted)). If the challenged information is accurate, "no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." Collins v. Experian Credit Reporting Serv., 494 F. Supp. 2d 127, 135 (D. Conn. 2007) (collecting cases) (citation and internal quotation marks omitted). Thus, before inquiring into the reasonableness of a CRA's procedures, a plaintiff must first "identify specific information in his credit report that is inaccurate and explain why the information is inaccurate." Phipps, 2020 WL 3268488, at *3 (citation omitted).

A plaintiff must show more than a mere reporting of inaccurate information to establish liability under Section 1681e(b) or Section 1681i. See 15 U.S.C. §§ 1681o, 1681n (imposing liability for willful or negligent noncompliance of FCRA requirements); Cohen v. Equifax Info. Servs., LLC, No. 18-CV-6210, 2019 WL 5200759, at *5 (S.D.N.Y. Sept. 13, 2019) ("[A] credit reporting agency is not held strictly liable under the FCRA merely for reporting [inaccurate information]…." (quoting Whelan, 862 F. Supp. at 829)); Gaft v. Mitsubishi Motor Credit of Am., No. 07-CV-527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009) (holding that merely reporting inaccurate information, "in and of itself, is not a violation of the FCRA…."). A plaintiff must also show that the CRA failed, "through negligence or intention, to follow

reasonable procedures to ensure accuracy of information" under Section 1681e(b), Gaft, 2009 WL 3148764, at *9, or to conduct a reasonable reinvestigation when "the completeness or accuracy of any item of information" in the plaintiff's file is disputed under Section 1681i. 15 U.S.C. § 1681i(a)(1)(A).

Here, plaintiff fails to make the threshold showing that the information in his credit report was inaccurate. Plaintiff alleges that beginning in 2017, Equifax "removed over thirty-four (34)…credit accounts" reflecting "positive" credit such that he "had almost no accounts" in his credit file, leading to inaccuracies in Equifax's report. Am. Compl. ¶ 86; Plf.'s Opp. Def.'s Mot. Summ. J. at 20–21 [ECF No. 169 at 36–37]; Plf.'s Mot. Summ. J., Ex. D [ECF No. 169-1 at 11]. However, plaintiff provides scant evidence beyond his own assertions that the alleged "positive credit" accounts were, in fact, removed. Of the eight investigations that Equifax initiated between January and September 2017, only three resulted in the deletion of an account from plaintiff's credit file. Of the six or so accounts that plaintiff disputed on September 1, 2017, all were verified as belonging to plaintiff except for one account at FNBO, which Equifax deleted from his file after confirming with FNBO. Smith Decl. ¶¶ 56–64; Smith Decl., Ex. JJ. Because plaintiff alleges inaccuracies in his report resulting from the accounts' *removal*, accounts that Equifax verified as accurate and did not remove from plaintiff's credit report are irrelevant to his claims.

As to three of the accounts that were removed from plaintiff's file—the Merrick account deleted on January 29, 2017; the IC System account deleted on September 15, 2017; and the FNBO account deleted in response to plaintiff's dispute in September 2017—plaintiff fails to demonstrate why or how their removal resulted in any reported inaccuracies. See Fashakin v. Nextel Commc'ns, No. 05-CV-3080, 2009 WL 790350, at *10 (E.D.N.Y. Mar. 25, 2009)

("Where the consumer has given the consumer reporting agency no reason to question the accuracy of the initial information provided by the subscriber, the consumer reporting agency fulfills its [FCRA obligations] by confirming the accuracy of the debt with the creditor." (citation omitted)); Gestetner v. Equifax Info. Servs. LLC, No. 18-CV-5665, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (dismissing plaintiff's Section 1681i and Section 1681e(b) claims alleging "erroneous and inaccurate information" without "any explanation as to why" the information was false).

Even if plaintiff could show resulting inaccuracies, he must also show that Equifax was at least negligent, if not willful, in deleting the accounts or reinvestigating the information that plaintiff disputed. Equifax states that it deleted the Merrick and IC System accounts only after receiving "fraud referrals" from other CRAs and seeking verification of the accounts with the data furnisher, and deleted the FNBO account only after FNBO instructed it to do so on September 18, 2017. Def.'s 56.1 ¶¶ 27–30, 47–49, 55. Equifax has sufficiently demonstrated that it followed procedures and investigated plaintiff's dispute in a "reasonable manner" regarding these removed accounts. Selvam v. Experian Info. Sols., Inc., No. 12-CV-1828, 2015 WL 1321615, at *7 (E.D.N.Y. Mar. 24, 2015), aff'd in part, vacated in part on other grounds, remanded, 651 F. App'x 29 (2d Cir. 2016) (summary order) (finding that defendant followed reasonable procedures and reasonably reinvestigated plaintiff's dispute by reviewing the dispute letters, sending an ACDV to the data furnisher with relevant information, and modifying or deleting the account depending on the furnisher's response); Okocha v. TransUnion LLC, 2011 WL 2837594, at *7 (E.D.N.Y. Mar. 31, 2015), aff'd 488 Fed. App'x 535 (2d Cir. 2012) (summary order) (finding that sending an ACDV as part of a CRA's reinvestigation procedure is reasonable as a matter of law where a consumer fails to provide any evidence creating a factual

dispute as to the accuracy or reliability of the original source of the reported information).

Plaintiff fails to support his claim that Equifax fabricated identity theft reports to delete the

accounts. Absent any evidence that Equifax's actions were willful or negligent, plaintiff fails to

raise a material issue of fact in dispute as to the removal of these three accounts.

However, there is a genuine issue as to whether Equifax acted negligently or willfully

when it deleted the US Bank account on June 7, 2017. The statements in Pamela Smith's

(Equifax's legal support lead) declaration attesting to US Bank's response do not appear to be

based on personal knowledge under Rule 602 of the Federal Rules of Evidence. See Smith Decl.

¶ 45; see also Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) (finding that a

court need not consider "portions of an affidavit that are not based upon the affiant's personal

knowledge, contain inadmissible hearsay or make generalized and conclusory statements.").

Moreover, the ACDV form cited in support of these statements does not reflect that US Bank

directed Equifax to delete the account. Smith Decl., Ex. V. Likewise, the letter notice in response

to plaintiff's September 1, 2017 dispute simply states that the account was removed. Smith Decl.,

Ex. JJ.

Plaintiff's evidence regarding the US Bank account's removal is also insufficient to

support summary judgment. The US Bank letters that plaintiff submits lack the requisite

foundation to be admissible for the truth of their contents under Fed. R. Civ. P. 56(c) or Local

Rule 56.1, and thus the Court should not consider them. See Nora Beverages, Inc. v. Perrier Grp.

Of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district

court properly considers only evidence that would be admissible at trial."). Even if the Court

were to consider these documents, they would not be enough to award plaintiff summary

judgment on this claim. The letter dated December 11, 2018 states that plaintiff "made an

identity fraud claim with Equifax" on June 8, 2017, that US Bank sent a request to Equifax to delete the account pursuant to US Bank procedures, and that US Bank's investigation determined that the information it submitted to Equifax is "accurate." Plf.'s Mot. Summ. J., Ex. E.  The undated letter from a "Jamie Villwok" at US Bank is addressed to no one but states that the account "was not the cause of fraud" and "should not have been deleted." Plf.'s Mot. Summ. J., Ex. D [ECF No. 169-1 at 20–21]. Not only are the contents of these letters contradictory, they say nothing about Equifax's negligent conduct.

Thus, upon review of the record evidence, a reasonable juror could find that Equifax failed to comply with reasonable procedures when it removed the US Bank account from plaintiff's credit file (Section 1681e(b)) and/or failed to reasonably reinvestigate the account's removal in response to plaintiff's dispute in September 2017 (Section 1681i).

III.    Whether Plaintiff Established a Violation under Section 1681g

Plaintiff alleges that Equifax failed to "provide his credit file" upon request. Am. Compl. ¶ 239(h). Section 1681g requires a CRA to disclose to a consumer "all information in the consumer's file" and the "sources of its information[,]" except for sources "acquired solely for use in preparing an investigative consumer report…[,]" where the consumer makes the request and "furnish[es] proper identification." 15 U.S.C. § 1681g(a)(1)–(2). It also grants a consumer the right to obtain a copy of their credit report. 15 U.S.C. § 1681g(c). A plaintiff must show that the CRA's failure to comply with this Section was willful or negligent. Selvam v. Experian Info. Sols., Inc., No. 12-CV-1828, 2018 WL 1582222, at *3 (E.D.N.Y. Mar. 30, 2018) (citing Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 233–34 (S.D.N.Y. 2014).

Here, plaintiff alleges that he made "repeated requests for information" for which he was either ignored or "harassed for his trouble." Plf.'s Mem. of Law at 12–13 [ECF No. 169 at 15–

16]. In support this claim, plaintiff further alleges that Equifax "flagged" his file in May 2014 with the following note: "Don't Send Revised File. Current Addr [*sic*] has not been verified, ILO, 05/09/2014."[18] Plf.'s 56.1, Ex. O [ECF No. 131-2 at 109]; Plf.'s 56.1 ¶ 43.

Without evidence of specific dates when plaintiff requested information or a copy of his file, or what information he requested, plaintiff's conclusory allegations cannot sustain his claim that Equifax failed to meet the requirements of Section 1681g. Equifax's note from May 2014 is outside the statute of limitations period, but even if it were within it, it merely shows that Equifax had not verified plaintiff's current address, not that Equifax refused plaintiff access to his credit file. Cohen v. Equifax Info. Servs., LLC, 827 F. App'x 14, 19 (2d Cir. 2020) (summary order) (finding that plaintiff had provided evidence that there was "insufficient data" to create her credit report, not a failure to disclose or deny access to her file.) After reviewing the record evidence, the Court finds that Equifax fulfilled its obligations under the FCRA and provided plaintiff a copy of his credit file no more than 30 days after plaintiff filed a dispute. Plaintiff has not raised a genuine dispute as to whether Equifax violated its obligations under Section 1681g, and thus plaintiff's cross-motion for summary judgment on this claim should be denied.

IV.    Whether Plaintiff Established a Violation Under NYFCRA Sections 380-j & 380-k

Plaintiff alleges that Equifax placed "fake fraud alerts" on his credit report, as well as on TransUnion and Experian's reports, without plaintiff's permission, in violation of Sections 380-j(e) and 380-k of the NYFCRA. Am. Compl. ¶ 74. The statutory text of Sections 380-j(e) and 380-k of the NYFCRA is substantially similar to that of Section 1681e of the FCRA, and thus "must be construed in the same way." Ogbon v. Beneficial Credit Servs., Inc., No. 10-CV-3760,

---

[18] Plaintiff also attaches a letter notice from Equifax dated July 2, 2014 that a "disputed address" had been deleted from the credit file, and a letter notice from Equifax dated September 10, 2014 that an address had been "added/updated per the information you have supplied." Plf.'s 56.1, Ex. J [ECF No. 131-2 at 86, 88].

2013 WL 1430467, at *7 n.6 (S.D.N.Y. Apr. 8, 2013) (citing Scott v. Real Estate Fin. Grp., 183 F.3d 97, 100 (2d Cir. 1999)). Section 1681e(a) requires that CRAs "maintain reasonable procedures designed to avoid violations of section 1681c" among other sections. 15 U.S.C. § 1681e(a). Section 1681c-1(h) requires that CRAs place "a 'fraud alert' on the file of any consumer who asserts in good faith that [he] has been, or is about to become, the victim of identity theft." Collins, 494 F. Supp. 2d at 132 (citing 15 U.S.C. § 1681c-1(h)). Once a CRA has placed a fraud alert on a consumer's credit file, "creditors [must] take additional steps to verify [the consumer's] identity before modifying any credit accounts or opening new credit accounts in the [consumer's] name." Id.

Plaintiff alleges that Equifax placed fake fraud alerts, without his authorization, on his credit files with Equifax, TransUnion and Experian, which resulted in him being barred from obtaining loans and other credit financing.[19] Am. Compl. ¶¶ 75, 83. While it is undisputed that Equifax placed a "seven-year fraud alert" on plaintiff's credit file after plaintiff filed an identity-theft related dispute in April 2014, Def.'s 56.1 ¶¶ 16–17, plaintiff provides no evidence that Equifax placed an alert on his credit files with TransUnion or Experian. The Experian notices that plaintiff submits merely demonstrate that Experian was notified by "one or more nationwide consumer credit reporting companies" and placed an alert "[t]o assist [plaintiff] in protecting [his] privacy" pursuant to Experian's own policies. Am. Compl., Ex. F. The alert was removed in August 2017, also pursuant to Experian's policies. Id. Plaintiff presents no evidence to show that Equifax subsequently requested that Experian reinsert the alert. Plaintiff also presents no evidence that Equifax included a "fake" phone number on his credit report for creditors to call to verify his identity "with the intent to destroy plaintiff's access to capital." Plf.'s 56.1 ¶ 10.

---

[19] Plaintiff does not cite any statute or regulation that requires Equifax to obtain plaintiff's authorization prior to placing a fraud alert on his report.

Accordingly, plaintiff's cross-motion for summary judgment on his claim against Equifax for placing fake fraud alerts on his credit files should be denied.

## V.    Damages

To survive a summary judgment motion on a negligence claim under the FCRA (in this case, Equifax's negligence in removing the US Bank account from plaintiff's credit file), plaintiff must show actual injury resulting from Equifax's negligent conduct. Selvam v. Experian Info. Sols., Inc., 2018 WL 1582222, at *4 ("To sustain a claim for negligence under the FCRA, [p]laintiff must prove actual damages." (citing Braun v. Client Servs Inc., 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014))). Actual damages may include a denial of credit, as well as "humiliation and mental distress, even in the absence of out-of-pocket expenses." Trikas v. Universal Card Servs. Corp., 351 F. Supp. 2d 37, 45 (E.D.N.Y. 2005).

A plaintiff must show causation to recover actual damages in a FCRA negligence claim. See Casella, 56 F.3d at 474–75 (affirming the district court's decision to deny plaintiff's claim for actual damages "due to a lack of causation between the harm alleged…and [defendants'] alleged violations of the FCRA.") The Second Circuit has not settled on the degree of causation necessary to prove actual damages in the FCRA context; however, "[w]hat is clear…is that any harm must be traceable to the inaccurate, FCRA-violating information—not just to the report that contained that information or to accurate data within the same report." Wenning v. On-Site Manager, Inc., No. 14-CV-9693, 2016 WL 3538379, at *22–23 (S.D.N.Y. June 22, 2016) (collecting cases). In other words, a plaintiff must show that the denial of credit or similar lost opportunities are attributable to the defendant's "failure to correct the furnished information after receiving notice of the dispute." Okocha v. HSBC Bank USA, N.A., No. 08-CV-8650, 2010 WL 5122614, at *6 (S.D.N.Y. Dec. 14, 2010); see also Burns v. Bank of Am., 655 F. Supp. 2d 240,

250 (S.D.N.Y. 2008), aff'd, 360 F. App'x 255 (2d Cir. 2010) (summary order) (a plaintiff "must present evidence of a causal relation between the violation of the statute and the loss of credit, or some other harm." (citation and internal quotation marks omitted)). Further, a plaintiff must show that creditors were aware of the inaccurate information. Jones, 982 F. Supp. 2d at 276 ("Courts have held that actual damages…are not available unless the CRA improperly discloses the credit report."); Caltabiano v. BSB Bank & Trust Co., 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) (The Second Circuit has "more broadly held" that a plaintiff cannot recover actual damages unless they can show that a creditor or other person "learned of the derogatory information from a credit reporting agency" (quoting Casella, 56 F.3d at 475)).

Here, plaintiff alleges that he sustained (1) economic damages from the denial of credit resulting in lost business opportunities, Am. Compl. ¶¶ 163–72, and an inability to cover the cost of his medical care, Id. ¶¶ 158–62; (2) physical pain and suffering including partial amputation of his foot, Id. ¶ 131; and (3) emotional distress damages including humiliation, embarrassment, anxiety, and fear, Id. ¶ 173.

The Court is unaware of any case where a plaintiff recovered FCRA damages for *physical* injuries. More importantly, the causal nexus that plaintiff asks the Court to draw between Equifax's negligent conduct and his physical injuries—a partial amputation and ongoing medical issues—is beyond attenuated. Considering plaintiff's allegations in the strongest light, the alleged chain of causation is as follows: Equifax deletes "positive credit" from plaintiff's report (resulting in inaccuracies); Comenity, as a potential creditor financing plaintiff's medical care, relies on Equifax's report in denying plaintiff credit; plaintiff steps on a nail; plaintiff delays treatment (because he does not have credit to cover treatment); plaintiff's injury worsens to the point that a partial amputation of his foot is necessary; and the amputation

creates permanent limitations in plaintiff's ability to walk along with other ongoing medical issues. There are just too many intervening causes in this chain of events to establish plaintiff's claim: the advice of physicians; that plaintiff stepped on a nail; plaintiff's delay in seeking treatment; the care plaintiff was provided; as well as plaintiff's other health conditions, including diabetes, high blood pressure, and "other medical issues." Plf.'s 56.1 ¶ 29. While the Court sympathizes with plaintiff's partial loss of his foot, there is no triable issue of fact as to whether Equifax's conduct was the proximate cause of, or fairly traceable to his physical injuries. See Casella, 56 F.3d 469, 474–75 (affirming the district court's conclusion that plaintiff was not entitled to pain and suffering damages where there was a "lack of causation between the harm alleged by [plaintiff] and…alleged violations of the FCRA."); cf. Chaconas v. JP Morgan Chase Bank, 713 F. Supp. 2d 1180, 1185–86 (S.D. Cal. 2010) (concluding in a fair debt collection case that plaintiff had not established a causal connection between plaintiff's "serious" physical injuries "from falling while rushing to answer [defendant's]…phone calls" and defendant's alleged conduct)

To recover emotional distress damages, plaintiff must submit "sufficient, objective evidence of emotional distress damages to warrant recovery of such damages." Patrolmen's Benevolent Ass'n of the City of N.Y., Inc. v. City of New York, 310 F.3d 43, 55–56 (2d Cir. 2002), cert. denied, 538 U.S. 1032 (2003). Plaintiff's damages "cannot stand on his subjective testimony alone." Caltabiano, 387 F. Supp. 2d at 142. Here, plaintiff alleges emotional distress in his amended complaint. However, these "conclusory allegations of emotional distress are insufficient to support a claim of damages." Neclerio v. Trans Union, LLC, 983 F. Supp. 2d 199, 215 (D. Conn. 2013) (finding plaintiff could have offered physician or therapist testimony, medical records "or any other records of any kind" to support his claim of emotional damages);

see also Rosenberg v. LoanDepot, Inc., No. 21-CV-08719, 2023 WL 1866871, at *5 (S.D.N.Y. Feb. 9, 2023) ("claims of emotional harm "must be supported by sufficient allegations" to support that the harm occurred." (citation and internal quotation marks omitted)).

However, construing the facts in the light most favorable to plaintiff, plaintiff demonstrates a genuine dispute as to his economic damages, at least as to those resulting from the deletion of the US Bank account. Where actual damages include a denial of credit, a plaintiff is not required to show that he was "worse off" without the loan or "related costs." Selvam v. Experian Info. Sols., Inc., 2018 WL 1582222, at *5. Plaintiff need only show that the creditor looked to Equifax as a "source of…information" in reviewing his credit application, and that the creditor's denial was "based, at least in part, on information provided by [the] defendant." Id. (finding that a denial letter stating that the creditor had used defendant as a source of information was sufficient for plaintiff's claim of economic damages to survive summary judgment).

Plaintiff provides three denial letters dated within the statute of limitations period (i.e. after December 4, 2016). Plf.'s 56.1, Ex. F [ECF No. 131-2 at 41–48]. First, plaintiff presents an Adverse Action Notice from Teachers Federal Credit Union ("TFCU"), dated May 30, 2017. Plf.'s 56.1, Ex. F [ECF No. 131-2 at 41]. TCFU's stated reason for denying plaintiff's $39,995 loan application is simply: "we cannot extend credit to you at this time." Id. Further, TFCU denied plaintiff's loan application *before* Equifax sent the ACDV to US Bank and thereafter deleted the US Bank account. Equifax's conduct is therefore not causally related to TFCU's credit denial. Trikas, 351 F. Supp. 2d at 45 (finding plaintiff did not suffer actual damages where information in a credit report "would not affect any credit decisions").

Plaintiff also presents a CareCredit Application Notice from Synchrony Bank, dated August 24, 2017. Plf.'s 56.1, Ex. F [ECF No. 131-2 at 45–46]. This notice simply states that

Synchrony Bank "is unable to approve [plaintiff] at this time" and suggests that plaintiff see his "CareCredit provider to discuss other payment options." Id. Without other evidence, this notice does not demonstrate that Synchrony Bank relied on Equifax's information in denying plaintiff's application. Jenkins v. AmeriCredit Fin. Servs., Inc., No. 14-CV-5687, 2017 WL 1325369, at *8 (E.D.N.Y. Feb. 14, 2017) (finding no evidence that any creditor relied on defendant's credit report in denying plaintiff's loan applications).

Finally, plaintiff presents a Credit Account Notice from Comenity Capital Bank ("Comenity"), dated August 25, 2017. Plf.'s 56.1, Ex. F [ECF No. 131-2 at 47–48]. This notice states that plaintiff's application for a "Patient Solutions" credit account was denied "because of information in [plaintiff's] credit report" and notes that its decision was based, "in whole or in part, on information [Comenity] obtained from" Equifax. Id. Comenity's notice clearly states that its decision to deny plaintiff patient financing relied on Equifax's credit report. Thus, a reasonable juror could find that Equifax's failure to comply with its FCRA duties caused Comenity to deny plaintiff credit, thereby precluding one option for covering plaintiff's medical care. Defendant's motion for summary judgment on plaintiff's claim for actual damages resulting from Comenity's denial of credit should therefore be denied.[20]

VI.    Punitive or Statutory Damages

Plaintiff may recover statutory and punitive damages if he can show that Equifax willfully violated the FCRA. See 15 U.S.C. § 1681n(a)(2). "[U]nlike with negligence claims,

---

[20] As to plaintiff's lost "business opportunities" such as a potential partnership with Goldman Sachs, this claim is "too speculative" to support an award of actual damages. Frederick v. Cap. One Bank (USA), N.A., No. 14-CV-5460, 2018 WL 1583289, at *12 (S.D.N.Y. Mar. 27, 2018); see also Dinoto v. Rockland Fin. Mtg. Co., LLC, No. 06-CV-1132, 2007 WL 2460674, at *5 (D. Conn. Aug. 2, 2007), report and recommendation adopted sub nom. Dinoto v. Rockland Fin. Mortg. Co., No. 06-CV-1132, 2007 WL 2667318 (D. Conn. Aug. 21, 2007) (declining to award damages where plaintiff's "loss of his job opportunity" and defendants' FCRA violations were too tenuous to support a lost wages award); see also Grigoryan v. Experian Info. Sols., Inc., 84 F. Supp. 3d 1044, 1084 (C.D. Cal. 2014) (finding that plaintiff had not demonstrated that defendant's FCRA violations "proximately caused any purported business damages.").

actual damages and causation are not elements of a willfulness claim." Wenning, 2016 WL
3538379, at *23; see also Northrop v. Hoffman of Simsbury, Inc., 12 Fed. App'x. 44, 50 (2d Cir.
2001) (summary order) (Finding that actual damages are not a statutory prerequisite to punitive
damages under the FCRA).

A plaintiff establishes a willful violation by plausibly alleging that a CRA "acted in
'reckless disregard of a requirement of the FCRA.'" Shimon, 431 F. Supp. 3d at 125 (quoting
Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 71 (2007)). A CRA acts with reckless disregard
when it runs "an unjustifiably high risk of harm that is either known or so obvious that it should
be known." Safeco, 551 U.S. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).
"[T]he mere failure to correct a plaintiff's inaccurate credit information, even after notification of
the inaccuracy does *not* constitute a willful failure to comply with the FCRA." George v. Equifax
Mortg. Servs., No. 06-CV-971, 2010 WL 3937308, at *2 (E.D.N.Y. Oct. 5, 2010) (emphasis in
original).

Plaintiff repeatedly alleges that Equifax acted willfully by, *inter alia*, "failing to delete
disputed claims, in actually contacting creditors to destroy plaintiff's credit and life." Plf.'s
Mem. of Law at 11 [ECF No. 169 at 14]. Plaintiff contends that his case is "one of the first fully
documented cases of maliciously, willfully, and negligently violating the [FCRA,]….by
[defendant] engaging in a scheme to destroy plaintiff's credit by creating, maintaining and
providing false information to third parties, that was furnished with malice and willful intent to
injure the plaintiff with willful fraud." Plf.'s Opp. Def.'s Mot. Summ. J. at 5 [ECF No. 169 at
21]. To support his claims of willfulness, plaintiff points to Equifax's alleged removal of "all of
plaintiff's historical positive credit," and attempts to block all of plaintiff's open active credit,
patient financing, loan and credit card applications, and his Paypal account. Id. at 19–20.

However, plaintiff's "evidence" of willful conduct is nothing more than his repetition of the allegations in his amended complaint. Even assuming Equifax was negligent in violating the FCRA, plaintiff has not established that defendant *willfully* failed to correct known inaccuracies in his credit report, or otherwise intentionally misled him or acted with reckless disregard. <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."). Plaintiff fails to establish willfulness as a matter of law. Plaintiff's motion for summary judgment on his claims for statutory and punitive damages pursuant to Section 1681n of the FCRA should therefore be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court should grant defendant's motion for summary judgment on plaintiff's claims with exception of the following two claims:

- Plaintiff's negligence claims pursuant to Sections 1681e(b) and 1681i of the FCRA as they relate to defendant's removal of the US Bank auto loan account from plaintiff's credit file in June 2017.

- Plaintiff's claim for actual economic damages resulting from the denial of credit by Comenity.

The Court should deny plaintiff's cross-motion for summary judgment in its entirety.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                    _____/S/_____
                                    LOIS BLOOM
                                    United States Magistrate Judge


Dated: August 24, 2023
        Brooklyn, New York

35